**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH VASQUEZ, | Case No. 1:20-cv-00502-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

## I.  INTRODUCTION

Plaintiff Joseph Vasquez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1383(c). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (Docs. 6, 10.)

## II. BACKGROUND

Plaintiff protectively filed his SSI application on June 22, 2016, alleging disability as of the application date due to attention deficit hyperactivity disorder ("ADHD") and bipolar disorder. (Administrative Record ("AR") 17, 57, 58, 61, 69, 70, 74, 82, 171, 175, 209, 219.) Plaintiff was born on January 18, 1997, and has an eleventh-grade education. (AR 20, 25, 38, 57, 69, 171, 176, 209, 219.)

### A. Relevant Evidence of Record[2]

#### 1. Medical Evidence

While in twelfth grade in 2014, Plaintiff had an individualized educational plan (IEP), which was noted that he "struggle[d] with processing instructions from the teacher." (AR 309.) He also "misse[d] social cues" and was "frequently . . . off topic." (AR 309, 322.) Plaintiff was noted to "struggle[] with organization, completing class and homework, and turning work in." (AR 309, 322.) He was observed to be "easily distracted by other students" and "not socially aware of going too far." (AR 310, 323.)

In November 2015, following a diagnosis of ADHD and bipolar disorder, Plaintiff presented for an outpatient appointment at Community Mental Health Center. He reported that his moods have been "okay," with "occasional irritability." (AR 406.) Plaintiff denied suicidal or homicidal ideas and hallucinations. (AR 406.) Upon examination, he was noted to be well-groomed and cooperative, with normal motor activity, cognition, speech, orientation, thought content, and affective range. (AR 406.) Plaintiff's sensorium was alert and thought processes organized, but his insight and judgment were noted to be "limited." (AR 406.) He had an "improved" response to medication. (AR 406.) He was assessed with "[d]isruptive mood dysregulation disorder" and ADHD. (AR 407.)

In December 2015, after the presenting to the hospital following an assault, Plaintiff was placed on a psychiatric hold as a result of suicidal ideation and self-destructive behavior. (AR 353–64, 369–72.) He purportedly made "very superficial scratches" to both forearms with a knife. (AR

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

360, 371.) Plaintiff reported feeling "bad because his life is not joyful anymore." (AR 360.) He stated he was "afraid to leave the hospital because he might hurt himself again." (AR 360.) Plaintiff reported both auditory and visual hallucinations. (AR 369.) His mental status examination showed normal orientation and thought process, with appropriate behavior and thought content. (AR 369.) Plaintiff's mood was euthymic, but his insight and judgment were both found to be moderately impaired. (AR 369.)

During his hospitalization, Plaintiff was treated with medications. (AR 363.) His condition "remained unstable for quite a while," in that his suicidal ideations and bad mood persisted. (AR 363.) Plaintiff eventually started showing improvement after approximately two weeks in the hospital, at which point he "became completely free of suicidal ideations" and his mood improved. (AR 363.) He was discharged with a "final diagnosis" of "[u]nspecified depressive disorder, rule out mental retardation." (AR 363.)

In January 2016, Plaintiff presented for a psychiatric evaluation at the Exodus Crisis Recovery Stabilization Center due to feeling depressed. (AR 373.) He denied suicidal ideation and hallucinations. (AR 373, 375, 376.) Plaintiff's mental status examination showed normal orientation and thought processes, and intact memory, but poor insight and judgment. (AR 373, 375.) He was diagnosed with bipolar disorder and discharged with instruction to continue taking his medications. (AR 376.)

In March 2016, Plaintiff sought counseling services from the adult mental health program of the Fresno County Department of Behavior Health. (AR 614.) His history of bipolar disorder and intellectual disabilities was noted. (AR 614.) It was reported that Plaintiff occasionally works with his father, but has trouble making friends and establishing relationships and tends to isolate. (AR 615.) Upon mental status examination, his behavior was noted as engaging and cooperative. (AR 615.) Plaintiff's speech was pressured and rapid, with an elevated mood and "fluctuating" affect. (AR 615.) He had normal orientation and fair memory, judgment, and insight, with goal-directed, tangential, and circumstantial thought flow. (AR 616.)

Plaintiff went back to the Community Mental Health Center for an outpatient visit in April 2016. (AR 392.) It was noted that his antidepressant medication was decreased following his last

3

visit, as Plaintiff was exhibiting mania with pressured speech. (AR 392.) He was noted to be quiet and responsive. (AR 392.) He denied feelings of depression, suicidal ideation, psychotic symptoms, and hallucinations. (AR 392.) Plaintiff's mother reported that he has been "impulsive." (AR 392.) His sleep was reportedly "problematic," but improved with medication. (AR 392.) Upon examination, he was noted to be well-groomed and cooperative, but quieter and exhibiting impulsive behavior. (AR 392.) Plaintiff had normal motor activity, cognition, speech, orientation, thought content, and affective range. (AR 392.) Plaintiff's sensorium was alert and thought processes organized, but his insight and judgment were noted to be "limited." (AR 392) He was diagnosed with bipolar disorder with psychotic features, ADHD, and major depressive disorder. (AR 392.) During a therapy session that same month, Plaintiff was observed to be "less manic" and reported "hanging out with his cousin, who just had a baby, and helping her around the house to some extent." (AR 443.)

In May 2016, Plaintiff reported that the medication has "helped with his focusing and impulsivity." (AR 388.) He was no longer manic since the decrease in his antidepressant. (AR 388.) He denied depressive feelings and suicidal ideation, and exhibited less irritability. (AR 388.) His mental examination results were the same as the prior month. (AR 388.)

Plaintiff reported that he was no longer having feelings of depression and no longer cutting himself in July 2016. (AR 386.) He stated he was able to focus and no longer hears voices. (AR 386.) Plaintiff denied suicidal or homicidal ideas. (AR 386.) He was observed to be "less interactive," with cooperative behavior, normal cognition, speech, orientation, thought content, and affective range. (AR 386.) Plaintiff's thought processes were organized, but his mood irritable and his insight and judgment limited. (AR 386.)

In August 2016, Plaintiff reported helping around the house and doing yard work, with no feelings of depression or anxiety. (AR 384.) He again denied hearing voices. (AR 384.) Plaintiff's mental status examination was the same as the previous month. (AR 384.) At a therapy session that same month, Plaintiff reported that his father was diagnosed with lung cancer. (AR 432.) He was observed to be in a good mood after discussing coping mechanisms. (AR 432.)

At a follow up appointment in November 2016, Plaintiff reported feeling some depression

and anxiety due to his father's diagnosis. (AR 382.) He claimed occasional irritability, but denied self-harming behavior. (AR 382.) Plaintiff also denied suicidal or homicidal ideas, mania, and hallucinations. (AR 382.) His examination showed he was well-groomed with cooperative behavior, normal thought content and cognition, organized thought processes, normal affective range, but limited insight and judgment and an irritable mood. (AR 382.)

In February 2017, Plaintiff reported at a follow up appointment that he had some difficulty with his ability to focus and completion of tasks. (AR 549.) He stated his moods have been "okay" with occasional feelings of depression. (AR 549.) He denied mania, self-harming behavior, suicidal ideations, and hallucinations. (AR 549.) Upon examination, he appeared well-groomed and was cooperative. (AR 549.) He exhibited less irritability, and his mental status was normal except for limited insight and judgment. (AR 549.)

Plaintiff presented for a follow up appointment in July 2017. (AR 538.) He reported his ability to focus has been "okay" and to having fewer mood swings, but occasional anger outbursts. (AR 538, 591.) Plaintiff has been helping to care for his father who has cancer. (AR 538, 591.) He reported occasional feelings of sadness, but no mania, self-harming behavior, suicidal ideations, and hallucinations. (AR 538, 591.) His mental status examination was the same as the prior appointment. (AR 538, 591.)

In September 2017, Plaintiff reported at his appointment that he was "fine" with good moods and lessened feelings of sadness. (AR 535, 578.) As with previous appointments, he denied mania, hallucinations, suicidal ideations, and self-harming behavior. (AR 535, 578.) His mental status examination was the same as before. (AR 535, 578.)

Plaintiff reported a "recent blow up with his brother" in November 2017. (AR 532.) His mother noted he had been "disrespectful lately." (AR 532.) Plaintiff is "socially awkward and has difficulty making friends." (AR 532.) He reported his sadness is lessened, but that he is having a difficult time with his father, who is being treated for cancer. (AR 532.) Plaintiff's mental status examination was unchanged, but his intelligence was listed as "below average." (AR 532.)

In April 2018, Plaintiff presented for a follow up appointment, having been off his medication for two months due to a lack of health insurance. (AR 530, 570.) Plaintiff's mental

status examination was the same as before, including his intelligence assessment. (AR 530, 570.) He complained of an inability to focus and concentrate and outbursts of anger. (AR 573.)

**2.     Opinion Evidence**

In November 2016, Mary Lewis, Psy. D., performed a mental status evaluation of Plaintiff. (AR 506–11.) Plaintiff complained that he could not work because he "doesn't listen a lot" and "get[s] tired easily." (AR 506.) He presented with good eye contact and hygiene and with a cooperative and pleasant attitude. (AR 507, 508.) Plaintiff had no obvious expressive or receptive language deficits. (AR 508.) He denied any psychiatric hospitalizations. (AR 507.) Plaintiff reported spending time watching television, playing video games, reading books, and helping his dad by cleaning his house and bringing him food. (AR 510.) He stated he is able to maintain his personal hygiene and complete his chores. (AR 510.)

Dr. Lewis observed Plaintiff's stream of mental activity was within normal limits, he was oriented in all spheres, and his stream of consciousness was linear, logical, coherent, and goal directed. (AR 508.) His mood was euthymic and his affect appropriate. (AR 508.) Dr. Lewis noted that Plaintiff could name the current and three previous United States presidents, identify how many eggs were in a dozen, and explain why food is placed in a refrigerator. (AR 508.) Plaintiff was correctly able to recall four digits forwards and backwards on digit span testing, solve basic arithmetic calculations, and perform serial two addition and subtractions. (Doc. 509.) He could state the similarities of related items and recalled three of three items after a five-minute delay. (Doc. 509). Dr. Lewis found Plaintiff's judgment within normal limits. (AR 509.) She opined that Plaintiff had no impairment in his abilities to perform basic work activities. (AR 510–11.)

In December 2016, H. Amado, M.D., a state agency physician, reviewed the record and found Plaintiff's impairments of obesity and affective disorder non-severe. (AR 63–65.) Upon reconsideration in March 2017, another state agency physician, N. Haroun, M.D., reviewed the record and affirmed Dr. Amado's findings. (AR 76–78.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 6,

2016, and again on reconsideration on March 16, 2017. (AR 17, 82–86, 94–99.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 100–112.)

On December 14, 2018, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 37–50.) A vocational expert ("VE") also testified at the hearing. (AR 50–56.)

### 1. Plaintiff's Testimony

Plaintiff testified that he lives in a house with his two brothers and parents. (AR 38.) He dropped out of high school in the twelfth grade due to bullying. (AR 38–39.) According to Plaintiff, he has difficulty focusing, concentrating, and performing tasks and they take him longer than most people because his "brain processes slower than normal." (AR 39, 40, 42.) He reported that he is able to wash dishes, take out the garbage, and cook meals. (AR 40, 45.) Plaintiff takes medication and needs reminders from his mother. (AR 48–49.) Plaintiff testified that he spends time watching movies with his nieces, going to the park, and dining in restaurants with a friend. (AR 41, 45.)

Plaintiff stated his anxiety causes him to "shut down" and that it is difficult for him to interact with new or different people. (AR 43, 45, 46.) According to Plaintiff, he has had angry outbursts at his brother and father and he "get[s] really frustrated a lot." (AR 47.) He testified that he still has suicidal thoughts due to his depression and anxiety. (AR 48.) Plaintiff stated he has very few friends due to "social anxiety." (AR 49.)

### 2. Vocational Expert's Testimony

The ALJ asked the Vocational Expert ("VE") to consider a person of Plaintiff's age and education, and work experience. (AR 51.) The VE was also to assume this person would have no exertional limitations and able to perform non-complex, routine tasks, with the following limitations: require jobs that are explained both verbally and through visual demonstration; no public interactions; occasional co-worker contact; and no teamwork related tasks. (AR 51.) The VE testified that such a person could perform unskilled work such as a conveyer feeder and off bearer, Dictionary of Operational Titles ("DOT") code 921.686-014, medium exertional level,

with a specific vocational preparation (SVP)[3] of 2, for which there are approximately 17,000 jobs in the national economy. (AR 52.) The VE further testified that such a person could perform unskilled work as a marker, DOT code 209.587-034, light exertional level, and SVP 2, for which there are approximately 366,000 jobs, and could also perform work as a poultry offal icer, DOT code 25.687-054, heavy exertional level and SVP 1, for which there are approximately 23,000 jobs in the nation. (AR 52.)

In a second hypothetical, the VE was asked by the ALJ to consider this same person as in the first hypothetical, but include the additional limitation that the person would require frequent supervision to remain on task. (AR 52.) The VE testified that no work would be available. (AR 53.) Plaintiff's counsel asked the VE to consider the person presented in the first hypothetical, but who would be off task 15% of the workday. (AR 53.) The VE responded that there would be no work such a person could perform. (AR 53.)

**C.    The ALJ's Decision**

In a decision dated March 8, 2019, the ALJ found that Plaintiff was not disabled. (AR 17–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920(a)(4). (AR 19–26.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 22, 2016, the application date (step one). (AR 19.) At step two, the ALJ found Plaintiff's bipolar disorder severe. (AR 19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20–22)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the RFC

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: He can perform noncomplex, routine tasks. He can have no public interactions. He can have occasional coworker contact with no teamwork related tasks.

(AR 22.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 23.) The ALJ determined that Plaintiff had no past relevant work (step 4), but that he was not disabled because, given his RFC, he could perform a significant number of other jobs in the local and national economies, specifically conveyor feeder and off bearer, marker, and poultry offal icer (step 5). (AR 25–26.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 13, 2020. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III. LEGAL STANDARD

#### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.  Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV. DISCUSSION

Plaintiff contends that there is no substantial evidence to support the ALJ's RFC assessment. (Doc. 15 at 6–8; Doc. 20 at 2–4.) He points out that "no medical professional assessed the impact of Plaintiff's diagnoses and symptoms on functionality," and that the ALJ should have "obtain[ed] an opinion from an examining source." (Doc. 15 at 8. *See also* Doc. 20 at 2.) Instead, according to Plaintiff, the ALJ relied on her lay interpretation of the medical evidence and erred in failing to develop the record further. (*See* Doc. 15 at 6, 8; Doc. 20 at 3.) Plaintiff contends that because the ALJ failed to develop the record, substantial evidence does not support the ALJ's RFC

1  determination and the matter should be remanded for further administrative proceedings. (*See* Doc.
2  15 at 8.) Plaintiff further asserts that the ALJ erred in discounting his subjective symptom
3  testimony. (*See* Doc. 15 at 9–10; Doc. 20 at 4–5.)

4  The Commissioner responds that Plaintiff failed to preserve the issue for appeal because
5  his counsel told the ALJ at the hearing that the record was complete. (Doc. 19 at 17–18.) The
6  Commissioner contends, alternatively, that no duty to develop the record arose because the ALJ
7  considered all of the evidence in the record, which was neither ambiguous nor inadequate, in
8  assessing Plaintiff's RFC. (*Id*. at 20–21.) The Commissioner maintains that the ALJ's RFC
9  assessment was therefore based on substantial evidence supported from interferences reasonably
10 drawn from the record and should be affirmed. (*Id*.) Finally, the Commissioner contends that the
11 ALJ's discounting of Plaintiff's subjective symptom statements was not erroneous. (Doc. 19 at
12 12–16.)

13 The Court addresses the parties' contentions below, and finds that reversal is not warranted.

14 **A.     Plaintiff's Challenge to the Record Does Not Constitute Reversible Error**

15       **1.     The Issue Has Not Been Preserved**

16 Preliminarily, as a rule, "when claimants are represented by counsel, they must raise all
17 issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel*
18 *v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Here, as the Commissioner points out, Plaintiff was
19 represented by counsel at the administrative hearing—the same counsel who represents him before
20 this Court—who expressly stated that the record was complete when asked by the ALJ. (AR 36
21 ("ALJ: And do you consider the record complete? ATTY: Yes.").); *see Meanel*, 172 F.3d at 1115;
22 *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009) (issue waived because attorney had
23 opportunity to raise it at administrative hearing but did not do so); *Ryan Patrick A. v. Berryhill*, No.
24 EDCV 17-2526-JPR, 2019 WL 1383800, at *7 (C.D. Cal. Mar. 27, 2019) (issue forfeited where
25 the plaintiff was represented by counsel at the administrative hearing, who twice stated that the
26 record was complete); *Valdez v. Berryhill*, Case No. SA CV 16-0980 JCG, 2018 WL 317799, at *1
27 (C.D. Cal. Jan. 5, 2018) (issue not properly preserved where the plaintiff was represented by
28 counsel at the administrative hearing and specifically stated he had "no objection" to the record

12

when asked by the ALJ). Accordingly, the issue is not properly preserved for appeal. *See Smith v. Saul*, No. 1:19-cv-01085-SKO, 2020 WL 6305830, at *7 (E.D. Cal. Oct. 28, 2020).

### 2. The ALJ Had No Duty to Develop the Record

Even if the issue had not been forfeited, Plaintiff has not shown that it warrants remand. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized record evidence spanning 2014 through 2018 and found with the support of that record that Plaintiff had not established he was disabled. (AR 20–25.) The record contained what appears to be Plaintiff's complete treatment records that supported the ALJ's findings and did not present an ambiguity or inadequacy. That the ALJ considered, but ultimately declined, to obtain an additional psychological examination (*see* AR 54–55) is not, as Plaintiff advances, a concession that the record was deficient, as such decisions are well within the ALJ's discretion. *See Pederson v. Colvin*, 31 F. Supp. 3d 1234, 1244 (E.D. Wash. 2014) ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.'") (quoting *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)). *See Albrecht v. Astrue*, No. 1:11-cv-01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (Consultative examination regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to resolve an inconsistency).

Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment

records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.920(a) ("[Y]ou have to prove to us that you are . . . disabled . . . ."). The record contained Plaintiff's complete treatment records, as counsel conceded, and no "gaps" or inconsistencies were noted. *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete). *See also Randolph v. Saul*, 2:18-cv-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (same). In the absence of any inadequacy or ambiguity in the record, which Plaintiff has not shown, the ALJ had no duty to develop it further.

### 3. The ALJ Did Not Err in Formulating Plaintiff's RFC

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Plaintiff's primary criticism of the ALJ's RFC assessment is his claim that it was the result of the ALJ improperly imposing his own lay interpretation of the medical evidence. (*See* Doc. 21 at 11–12, 14; Doc. 25 at 6.) This argument is unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's

1 responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need
2 not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v.*
3 *Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

4     According to the record, the only expert medical opinions regarding Plaintiff's mental
5 impairment are those of consultative examiner Dr. Lewis and State agency physicians Drs. Amado
6 and Haroun. (AR 24.) The ALJ considered these opinions in the content of the longitudinal record
7 and assigned them "little weight," finding that Plaintiff's "mental impairment has a more than
8 minimal impact on his ability to perform basic work activities" based on evidence not considered
9 by those physicians, including Plaintiff's psychiatric hospitalization and his IEP in high school.
10 (AR 24.) The ALJ, as she is charged to do, then interpreted that evidence and the other evidence
11 of record, such as Plaintiff's consistently normal mental status examination findings (*see* AR 382,
12 384, 388, 392, 406, 530, 532, 535, 538, 549, 570, 578, 591) and improvement with medication (*see*
13 AR 363, 384, 386, 388, 406, 535, 578)[5], and formulated Plaintiff's RFC.[6] *See, e.g., Mills,* 2014
14 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor"
15 lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records,
16 and plaintiff's own testimony in formulating an RFC."). *See also* 20 C.F.R. §§ 416.927(d)(2) ("the
17 final responsibility for deciding [RFC] is reserved to the Commissioner), § 416.945(a)(1) ("We
18 will assess your residual functional capacity based on all the relevant evidence in your case
19 record."). Indeed, the ALJ ultimately formulated an RFC that included mental limitations, where
20 none were found by the opining physicians. (*Compare* AR 22 *with* AR 63–65, 76-78, 510–11.)

21     Plaintiff does not specify what additional functional limitations the record might establish
22 that were not accounted for in the ALJ's RFC assessment. Nor does Plaintiff otherwise show any
23 inconsistency between the record and his RFC. To the extent Plaintiff is advocating for an
24 alternative interpretation of the evidence in the record, the Court will not second guess the ALJ's
25 reasonable interpretation, even if such evidence could give rise to inferences more favorable to

---

[5] "Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).

[6] The ALJ's RFC assessment is also based on consideration of the subjective complaint testimony, which, as set forth more fully below, the ALJ properly discredited.

15

Plaintiff. *See Molina*, 674 F.3d at 1110.

In sum, the Court finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**B.     The ALJ Properly Found Plaintiff Less Than Fully Credible**

    **1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.[7] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties

---

[7] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 19 at 13 n.4.)

16

concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 23.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 23.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the ALJ found that "the record does not indicate that [Plaintiff] is as limited as described." (*See* AR 25.) Had that been the end of the discussion, Plaintiff's argument that the ALJ erred by "fail[ing] to offer any clear or convincing reason for discounting Plaintiff's symptoms and alleged limitations" (Doc. 15 at 10) might have merit. However, the ALJ continued the analysis, explaining that Plaintiff "was able to complete some activities of daily living" and setting forth examples from the record.

It is appropriate for an ALJ to consider a claimant's activities that undermine claims of severe limitations in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). *See also Thomas*, 278 F.3d at 958–59 (An ALJ may support a determination that the claimant was not entirely credible by identifying

17

inconsistencies between the claimant's complaints and the claimant's activities.). Notwithstanding, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant can spend a substantial part of the day engaged in pursuits involving the performance of functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disability. *Fair*, 885 F.2d at 603. "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff alleges an inability to work due to ADHD and bipolar disorder, which he alleges causes him to experience anxiety, have difficulty interacting with different or new people, and trouble performing and completing tasks. (AR 39, 40, 42, 43, 45, 46, 57, 69,175.) Plaintiff further reported having trouble with concentration, staying focused, following instructions, and getting along with others. (AR 39, 47, 549, 573.) In evaluating Plaintiff's credibility, however, the ALJ cited activities that were inconsistent with Plaintiff's testimony and statements concerning the severity of his symptoms and impairments.

The ALJ noted, and the record reflects, that Plaintiff can complete household chores, including washing dishes, taking out garbage, cooking simple meals, and performing yard work. (AR 25, 40, 45, 384, 443, 510.) He had no problems with personal care, such as personal hygiene and grooming. (AR 25, 382, 392, 406, 507, 508, 510, 549.) The record shows that Plaintiff can do some shopping for necessities in public stores. (AR 25, 186, 198.) The ALJ also noted Plaintiff's statement that he previously worked with his father and cared for him during his illness. (AR 25, 538, 591, 615.) Plaintiff also reported helping his cousin, who had just had a baby, with her household chores. (AR 443.) According to Plaintiff, he spends his time watching television, playing video games, and reading books. (AR 510.)

The Court finds that these activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's alleged inability to work due to difficulties in concentration and focus, completing tasks, following instructions, and interacting with others. (AR 25.) Accordingly, the

inconsistencies between Plaintiff's activity level and his complaints was a clear and convincing reason to find his statements and testimony not credible. *See* 20 C.F.R. § 416.929(c)(3); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).

### V. CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: __**April 30, 2021**__  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE